### IN THE UNITED STATES DISTRICT COURT
### FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| Dwayne Handy, | |
| *Plaintiff,* | CIVIL ACTION |
| v. | NO. 24-1905 |
| City of Philadelphia, et al, | |
| *Defendants.* | |

**Pappert, J.**                                                    **September 26, 2024**

### MEMORANDUM

Dwayne Handy's 2013 convictions for murder and attempted murder were vacated in May 2022 after one of the police investigators, Philip Nordo, was convicted of numerous job-related crimes.  Handy was acquitted after a retrial and subsequently filed this lawsuit against the City of Philadelphia and the four detectives who conducted the investigation which led to his arrest and prosecution: Nordo, Gregory Singleton, Nathaniel Williams, and Ohmarr Jenkins.  Jenkins and Singleton move to dismiss Handy's Complaint on the grounds that it fails to state claims against them and that qualified immunity shields them from liability.  The Court grants the motion as to all claims against Singleton and some of the claims against Jenkins.  Handy will be allowed to amend his Complaint consistent with this Memorandum and the accompanying Order.

I

Handy was arrested by the Philadelphia police in April of 2011 for smoking marijuana.  (Compl. ¶ 2, ECF No. 1.)  He was taken to the police station, where detectives Nordo and Jenkins told him that he was suspected of killing Quince Morant

1

and attempting to kill Sharard DuBose.  (*Id.* ¶ 3.)  The apparent bases for that suspicion were eyewitness statements identifying Handy as the shooter.  (*Id.*)  Handy immediately denied any role in the crimes.  (*Id.*)  After leaving Handy alone in the interrogation room for about a half-hour, Nordo returned and began pressuring him to admit involvement in the murder and attempted murder, telling Handy he would not be allowed to leave until they "g[o]t something on paper" implicating Handy.  (*Id.* ¶¶ 7, 8, 45.)

Nordo also pressured Handy to talk about his past sexual behavior and sexual preferences, threatening to make Handy's life "a living hell" and to put Handy in jail for the rest of his life if he refused.  (*Id.* ¶¶ 5, 45.)  For example, Nordo asked Handy whether he masturbated while serving a previous sentence and whether he had sexual relations with his cellmate.  (*Id.* ¶ 45.)  When Handy denied both, Nordo accused him of lying and continued to probe, stating that he would be unable to help Handy until he told the truth.  (*Id.*)  To placate Nordo, Handy lied and said that he did masturbate in jail and have sex with his cellmate.  (*Id.*)  As the interrogation continued, Handy continued to make up facts about his sexual history to appease Nordo.  (*Id.*)  At some point during the interrogation, Jenkins returned but "sat all the way in the back of the room, on his phone."  (*Id.*)

Nordo eventually told Handy that he wanted to have intercourse with Handy and for Handy to participate in pornographic movies produced by people Nordo knew. (*Id.*)  The implication was that Handy would be allowed to leave once he signed a false confession, and Nordo would thereafter ensure Handy's freedom so that he could reunite with Nordo to have sex and film pornography.  (*Id.* ¶¶ 45, 49.)  Handy

eventually signed a confession fabricated by Nordo, believing that Nordo would not let him leave until he did.  (*Id.* ¶¶ 8, 45.)  Handy left the police station after signing, apparently the same day he was brought in.  (*Id.* ¶ 45.)

During the investigation, Nordo, Jenkins, Singleton and Williams all interviewed witnesses who implicated Handy, and all but one of those witnesses "were [un]willing to stand by their statements at trial."  (*Id.* ¶ 55.)  Handy was nevertheless convicted in 2013 after a trial at which the prosecution introduced Handy's confession against him, and he was sentenced to life in prison without the possibility of parole. (*Id.* ¶¶ 9, 19, 56.)  His conviction was vacated in 2022 after Nordo's convictions, and he was acquitted following his retrial.  (*Id.* ¶¶ 11, 19, 32.)

Handy asserts claims under § 1983 against the four individual defendants for malicious prosecution, fabrication of evidence, withholding exculpatory evidence, inadequate investigation, violation of his right against self-incrimination, civil-rights conspiracy, and failure to intervene, and for malicious prosecution under Pennsylvania law.  He also asserts a *Monell* claim against the City of Philadelphia, alleging it had policies or customs of coercing confessions, fabricating evidence, and withholding exculpatory evidence.

## II

To avoid dismissal for failure to state a claim under Rule 12(b)(6), a complaint must contain facts sufficient to state a claim that is facially "plausible."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim is facially plausible when the factual allegations permit a court to make the reasonable inference that the defendant is liable for the alleged misconduct.

*Id.* The "mere possibility of misconduct" is not enough; the complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* at 678–79 (quoting *Twombly*, 550 U.S. at 570).

Determining plausibility is a "context-specific task" requiring a court to use its "judicial experience and common sense." *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 786–87 (3d Cir. 2016)). In making this determination, the court assumes well-pleaded facts are true, construes those facts in the light most favorable to the plaintiff, and draws reasonable inferences from them. *Id.* at 790. The plaintiff need only allege enough facts to "raise a reasonable expectation that discovery will reveal evidence" of each element of his claim. *Connelly*, 809 F.3d, at 788–89. But "[c]onclusory assertions of fact and legal conclusions," are not entitled to the presumption of truth. *Schuchardt v. President of the United States*, 839 F.3d 336, 347 (3d Cir. 2016). So "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Iqbal*, 556 U.S. at 678, (quoting *Twombly*, 550 U.S. at 555).

III

Evaluating a motion to dismiss a § 1983 claim proceeds in two steps. First, courts will "identify the exact contours of the underlying right" and determine whether the plaintiff "has alleged a deprivation" of that right. *Chavarriaga v. N.J. Dep't of Corr.*, 806 F.3d 210, 222 (3d Cir. 2015). Second, courts determine whether the plaintiff has alleged the defendant's "personal involvement in the alleged wrongs." *Id.* A defendant who did not actually participate in the wrongful conduct may only be liable if the defendant (1) was a policymaker who promulgated an unlawful policy that caused the deprivation of the plaintiff's right, or (2) as the person in charge, either "directed"

4

the deprivation or had knowledge of and acquiesced in the deprivation. *A.M. v. Luzerne County Juvenile Det. Ctr.*, 372 F.3d 572, 586 (3d Cir. 2004). A plaintiff must plead each defendant's involvement with "appropriate particularity" to ensure that government officials are held liable only for their own misconduct. *Scheing v. Fountain*, 729 F. App'x 175, 178 (3d Cir. 2018).

In addition, qualified immunity will shield police officers from liability when the right allegedly violated is not "clearly established at the time of [the] alleged misconduct." *Pearson v. Callahan*, 555 U.S. 223, 232 (2009). A court may determine whether the right allegedly violated was "clearly established" before it determines whether the plaintiff adequately alleges a violation. *Id.* at 236. A right is "clearly established" when its "contours [are] sufficiently definite that any reasonable official in the defendant's shoes would have understood that he was violating it." *Plumhoff v. Rickard*, 572 U.S. 765, 778–79 (2014). "While there does not have to be a case directly on point, existing precedent must place the lawfulness of the particular [action] beyond debate." *D.C. v. Wesby*, 583 U.S. 48, 64 (2018).

A

Handy alleges malicious prosecution pursuant to the Fourth and Fourteenth Amendments. The Court dismisses the Fourteenth Amendment claim on qualified-immunity grounds because there is no clearly established right against malicious prosecution under the Fourteenth Amendment, and no such right was clearly established during the period of the individual defendants' alleged misconduct, 2011 to 2013. *See Thomas v. City of Philadelphia*, 290 F. Supp. 3d 371, 382 (E.D. Pa. 2018); *Crosland v. City of Philadelphia*, 676 F. Supp. 3d 364, 377 (E.D. Pa. 2023); *Alicea v.*

*City of Phila.*, No. 22-3437, 2022 WL 17477143, at *4 (E.D. Pa. Dec. 6, 2022); *Lewis v. City of Phila.*, No. 19-2847, 2020 WL 1683451, at *7-8 (E. D Pa. Apr. 6, 2020).

To state a claim for malicious prosecution under the Fourth Amendment, a plaintiff must allege that (1) the defendant initiated a criminal proceeding; (2) the criminal proceeding ended in the plaintiff's favor; (3) the proceeding was initiated without probable cause; (4) the defendant acted maliciously or for a purpose other than bringing the plaintiff to justice; and (5) the plaintiff suffered a deprivation of liberty consistent with the concept of seizure as a consequence of the legal proceeding. *Halsey v. Pfeiffer*, 750 F.3d 273, 296–97 (3d Cir. 2014). A police officer may be liable for malicious prosecution if he "influenced or participated in the decision" to initiate criminal proceedings by, for example, concealing or misrepresenting material facts to the prosecutor. *Id.* at 297.

Handy first fails to allege any facts suggesting that Singleton personally participated in initiating the proceeding against Handy. Handy alleges only that Singleton obtained statements from unidentified witnesses who later, for unknown reasons, recanted those statements. Such an allegation does not permit the inference that Singleton misled or concealed facts from the prosecutor or otherwise influenced the decision to initiate the proceeding in any way. (Compl. ¶ 55.)

Handy also fails to allege the absence of probable cause to initiate the proceeding. "Probable cause exists when the totality of facts and circumstances are sufficient to warrant an ordinary prudent officer to believe that the party charged has committed an offense." *Garcia v. County of Bucks*, 155 F.Supp.2d 259, 265 (E.D. Pa. 2001) (citing *Sharrar v. Felsing*, 128 F.3d 810, 817–18 (3d Cir. 1997), *abrogated on*

*other grounds*).  Even if Singleton and Jenkins knew that Handy's confession was false and coerced by Nordo, Handy must still allege that there was no probable cause to initiate the proceeding without the confession.  *See Halsey*, 750 F.3d, at 300.  But Handy alleges that other witnesses gave statements implicating him and alleges no facts suggesting that an ordinary prudent officer would have distrusted those statements.  (Compl. ¶ 55.)  That most of the witnesses recanted their statements at trial says nothing about the reasonableness of *initiating* proceedings on the basis of those statements.  (*Id.*) [1]

### B

Handy's Complaint includes three separate claims under the heading "deprivation of liberty without due process": fabrication of evidence, suppression of exculpatory evidence and failure to conduct an adequate investigation.

### 1

A plaintiff may bring a fabrication-of-evidence claim if he was "convicted at a trial at which the prosecution [] used fabricated evidence."  *Mervilus v. Union Cnty.*, 73 F.4th 185, 193 (3d Cir. 2023) (quoting *Halsey*, 750 F.3d, at 294 (3d Cir. 2014).  The plaintiff must establish that the defendant "formulated or submitted false evidence willfully, knowingly, or with a reckless disregard for its truth."  *Id.* at 194–95.

Handy has not alleged facts supporting a plausible fabrication claim against Singleton or Jenkins because he has not alleged that either defendant personally

---

[1] Handy's state-law malicious-prosecution claims must satisfy the first four elements of a Fourth Amendment malicious-prosecution prosecution.  *See Zimmerman v. Corbett*, 873 F.3d 414, 418 (3d Cir. 2017*); see also Henderson v. City of Philadelphia*, 853 F. Supp. 2d 514, 518 (E.D. Pa. 2012) (analyzing the shared elements "simultaneously").  Because Handy fails to allege a lack of probable cause, his state-law malicious-prosecution claims also fail.

participated in the formulation or submission of falsified evidence. That Singleton and Jenkins interviewed unidentified witnesses who later recanted their statements says nothing about whether Jenkins or Singleton did anything untoward in gathering those statements. And the mere allegation that Jenkins was in the back of the interrogation room on his phone while Nordo coerced Handy's confession does not permit the inference that Jenkins participated in that coercion or later submitted that confession to the prosecution.

2

Handy next alleges that Jenkins and Singleton withheld evidence favorable to Handy in violation of his rights under *Brady v. Maryland*, 373 U.S. 83 (1963). A *Brady* violation has three elements: "(1) the evidence at issue is favorable to the accused, because either exculpatory or impeaching; (2) the prosecution withheld it; and (3) the defendant was prejudiced because the evidence was 'material.'" *Breakiron v. Horn*, 642 F.3d 126, 133 (3d Cir. 2011). Police officers can be liable for a *Brady* violation under § 1983 for failing to disclose exculpatory information to the prosecutor. *Gibson v. Superintendent of NJ Dep't of L. & Pub. Safety-Div. of State Police*, 411 F.3d 427, 443 (3d Cir. 2005). This includes, for example, when officers "suppress[] the extent of their impermissible law enforcement tactics." *Id.*; *see also Thorpe v. City of Phila.*, No. 19-5094, 2020 WL 5217396, at *13 (E.D. Pa. Sept. 1, 2020) (denying dismissal of *Brady* claim against officer "who failed to report that [a witness] did not identify [the defendant] in a photo array").

Handy fails to allege Singleton's personal involvement in any *Brady* violation because Handy does not identify any evidence favorable to him that Singleton knew of

but failed to disclose to the prosecution.  Handy does, however, plausibly allege a *Brady* violation by Jenkins for failing to disclose impermissible law enforcement tactics—namely, Nordo's alleged coercion of Handy's confession.

The allegation that Jenkins was in the room during the interrogation (Compl. ¶ 45), permits the inference that Jenkins knew about the alleged coercion.  In addition, Handy's allegation that the confession was used against him at trial means that *someone* failed to comply with their obligations under *Brady*; either the officers or the prosecutors.  (Compl. ¶ 56.)  Handy cannot be expected to know, without discovery, who did so.  *Cf. Bravo v. City of Philadelphia*, No. 22-5190, 2023 WL 6133171, at *3–4 (E.D. Pa. Sept. 19, 2023) (refusing to dismiss for plaintiff's failure to identify "[which defendants] exactly made which decisions"); *Walker v. Doe*, No. 14-1504, 2015 WL 5567928 at *3 (W.D. Pa Sept. 22, 2015) (similar).  Given that Jenkins allegedly sat by and did nothing while Nordo told Handy that he could not leave until he confessed and that his freedom thereafter depended on doing sexual favors for Nordo, it is reasonable to infer at this stage that Jenkins knew of, yet did not tell the prosecutor these facts.

Finally, Handy's allegations support the inference that evidence of Nordo's coercion was "material."  "Evidence is material if there is a reasonable probability that, if the evidence had been disclosed, the result of the proceeding would have been different."  *Wilson v. Beard*, 589 F.3d 651, 665 (3d Cir. 2009) (citing *Giglio v. United States*, 405 U.S. 150, 154 (1972)).  Handy has alleged facts which could establish that evidence of Nordo's coercive tactics was material, given that Handy was retried and acquitted after that evidence came to light.  (Compl.  ¶¶ 19, 32.)

3

Courts in this district have consistently held that there is no constitutional right to a police investigation, let alone one that meets some threshold of "adequacy," and no such right was clearly established during the relevant period of 2011 to 2013. *Thomas*, 290 F. Supp. 3d, at 386 (citing *Whitehead v. City of Phila.*, No. 13-2167, 2014 WL 657486, at *2 (E.D. Pa. Feb. 19, 2014) and *Wright v. City of Philadelphia*, 229 F. Supp. 3d 322, 332 n.3 (E.D. Pa. 2017)).  Jenkins and Singleton are thus entitled to qualified immunity on Handy's inadequate-investigation claim.

C

Handy next asserts a claim for violation of his right against self-incrimination, alleging that the defendants (1) used coercive interrogation techniques and (2) failed to read him his rights under *Miranda v. Arizona*, 384 U.S. 436 (1966).  First, Handy fails to state a claim against Jenkins or Singleton based on the alleged coercive tactics because, again, he does not adequately allege their personal involvement.  As explained in Part III.B.1 *supra*, Handy has not alleged facts from which the court can infer that either Jenkins or Singleton participated in coercing Handy's confession.

Second, Handy fails to allege facts which could show that either Jenkins or Singleton are responsible for the alleged failure to read him his rights.  Officers are required to read a detainee his *Miranda* warning before they may perform "custodial interrogation."  *United States v. Brownlee*, 454 F.3d 131, 146 (3d Cir. 2006).  An officer "interrogates" a suspect for *Miranda* purposes when he says "any words or [takes any] actions … (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect."

*Id.* (quoting *Rhode Island v. Innis*, 446 U.S. 291, 300–01 (1980).  Handy has not alleged any actions by Singleton or Jenkins during the interrogation in which Handy confessed that were reasonably likely to elicit an incriminating response.  And the Court is aware of no authority for the proposition that an officer who did not participate in the interrogation in which a defendant incriminated himself might nevertheless be liable under § 1983 for failing to give a *Miranda* warning.

D

Handy next asserts a claim for conspiracy to violate civil rights, which requires that (1) two or more persons agree to deprive the plaintiff of a right; (2) one or more of the conspirators performs an "overt act in furtherance of the conspiracy"; and (3) the "overt act injures the plaintiff in his person or property or deprives the plaintiff of any right or privilege of a citizen of the United States, with the added gloss under § 1983 that the conspirators act under the color of state law."  *Jutrowski v. Twp. of Riverdale*, 904 F.3d 280, 294 n.15 (3d Cir. 2018).

Handy fails to allege facts that could establish that either Jenkins or Singleton reached any "agreement," with each other or anyone else.  The complaint includes only the conclusory assertions that "the individual defendants … acted in concert and conspired" and "the individual defendants … agreed."  (25, 96).  These "conclusory allegation[s] of agreement at some unidentified point" are insufficient.  *Twombly*, 550 U.S., at 557.

E

Handy next asserts claims against Singleton and Jenkins for their "failure to intervene" to prevent Handy's "false arrest, malicious prosecution, false imprisonment, and deprivation of liberty without due process of law."  (Compl. ¶ 100.)

Handy does not allege facts that would plausibly support claims for failure to intervene to prevent his false arrest or false imprisonment because has not alleged facts to support any underlying false-arrest or false-imprisonment claims.  A plaintiff may state a claim pursuant to § 1983 for false arrest under the Fourth Amendment if the officers who arrested him had no probable cause to do so.  *Harvard v. Cesnalis*, 973 F.3d 190, 199 (3d Cir. 2020).  But the arrest is not wrongful if the arresting officers had probable cause to arrest for at least one charge.  *Johnson v. Knorr*, 477 F.3d 75, 85 (3d Cir. 2007).  A plaintiff can also state a claim for false imprisonment based on detention pursuant to an arrest made without probable cause.  *Groman v. Twp. of Manalapan*, 47 F.3d 628, 636 (3d Cir. 1995).  He could also state a false-imprisonment claim if the government dropped all charges supported by probable cause yet continued to detain him pursuant to a charge not supported by probable cause.  *See Chiaverini v. City of Napoleon, Ohio*, 602 U.S. 556, 557 (2024).

Handy alleges that he was originally arrested for "smoking marijuana" and alleges no facts suggesting that the arresting officers lacked probable cause to arrest him on that charge, nor any facts suggesting it was unreasonable detain him for less than a day pursuant to that arrest.  (Compl. ¶¶ 2, 45.)  And even if the marijuana charge was unsupported by probable cause or dropped before Handy was released, Handy alleges that witnesses gave statements implicating him in the murder and

attempted murder.  (Compl. ¶ 55.)  Jenkins and Nordo apparently represented that they had at least some of those statements before Handy's April 2011 arrest, and Handy has not alleged that those representations were false.  (Compl. ¶ 3.)  Handy also has not alleged any facts suggesting that an ordinary prudent officer would not trust those statements.

Handy's claims against Jenkins and Singleton for failure to intervene to prevent malicious prosecution and deprivation of liberty are barred by qualified immunity. Courts in this district have consistently held that there is no clearly established stand-alone right to intervention by officers to prevent malicious prosecution or deprivation of liberty without due process, and no such right was clearly established during 2011 and 2013.  *See Onyiah v. City of Philadelphia*, 660 F. Supp. 3d 407, 416 (E.D. Pa. 2023); *Ogrod v. City of Philadelphia*, 598 F. Supp. 3d 253, 273 (E.D. Pa. 2022); *Thorpe*, 2020 WL 5217396, at *10–11; *Outlaw v. City of Philadelphia*, No. 21-1290, 2021 WL 3471168, at *7 (E.D. Pa. Aug. 6, 2021).

## IV

A court should grant a plaintiff leave to amend a complaint "when justice so requires."  Fed. R. Civ. P. 15(a)(2).  This rule expresses "a preference for liberally granting leave to amend" unless "amendment would cause undue delay or prejudice, or that amendment would be futile."  *Oran v. Stafford*, 226 F.3d 275, 291 (3d Cir. 2000). Handy may amend those claims dismissed without prejudice consistent with the accompanying Order.

BY THE COURT:


***/s/ Gerald J. Pappert***

Gerald J. Pappert, J.